IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RJO INVESTMENTS, INC.;
RANDY ODOM, INC.                                                           PLAINTIFFS

V.                              CASE NO. 5:18-CV-05015-TLB

CROWN FINANCIAL, LLC                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court is the Motion to Remand (Doc. 13) submitted by
Plaintiffs, RJO Investments, Inc. and Randy Odom, Inc., on February 15, 2018. In their
Motion to Remand, Plaintiffs argue that the Court lacks subject matter jurisdiction
because Defendant, Crown Financial LLC, untimely removed the case under 28 U.S.C.
§ 1446(b), (c)(1).

The Court has reviewed the parties' briefs and entertained oral arguments on the
motion during a hearing on March 28, 2018. As explained below, the Motion to Remand
is **GRANTED**.

### I. BACKGROUND

Plaintiffs RJO Investments, Inc. and Randy Odom, Inc., both Arkansas
corporations, allegedly hold certain promissory notes executed on December 2, 2011, by
Jeremy Carroll, individually and as Managing Member of Beckham Creek Properties,
LLC. The promissory notes are secured by certain real property in Newton County,
Arkansas that is owned by Beckham Creek Properties. Plaintiffs at some point felt that
Carroll and/or Beckham Creek Properties did not satisfy the obligations imposed on them
by the promissory notes, so Plaintiffs filed the Original Complaint (Doc. 1-1) in the Circuit
Court of Newton County, Arkansas on September 29, 2016. The Original Complaint

named Carroll and Beckham Creek Properties, both Arkansas citizens and Crown Financial, LLC ("Crown Financial"), a Texas citizen, which the plaintiffs believed held a superior lien on the mortgaged property located in Newton County.

Plaintiffs were ultimately unable to perfect service of process on both Carroll and Beckham Creek Properties. Thus, Carroll filed a motion to dismiss the claim against him for failure to perfect service, and that motion was granted without prejudice on September 11, 2017. *See* Doc. 16, p. 2. As for Beckham Creek Properties, Plaintiffs opted to voluntarily nonsuit their claims against it on November 7, 2017. *Id.* Plaintiffs thereafter filed a separate case on November 20, 2017, against both Carroll and Beckham Creek Properties in Newton County Circuit Court. (Doc. 14, p. 2). Therefore, as of the end of November of 2017, there were two cases pending in state court concerning Plaintiffs' interest in the subject property: one against Crown Financial and one against Carroll and Beckham Creek Properties.

Sometime in late December of 2017, Plaintiffs learned through discovery that Carroll had conveyed his membership interest in Beckham Creek Properties to Crown Financial approximately four months prior to the execution of the promissory notes. *See* Doc. 14-2. Upon learning this information, Plaintiffs filed an Amended Complaint (Doc. 3) against Crown Financial on January 16, 2018, alleging that: (1) Carroll retained apparent authority to enter into the promissory notes on behalf of Beckham Creek Properties; (2) Plaintiffs' lien on the mortgaged property remained valid because they were entitled to rely upon Carroll's representations that he remained the company's Managing Member; (3) Crown Financial's lien on the mortgage property "merged" with its

ownership of Beckham Creek Properties; and (4) this merger elevated Plaintiffs' mortgage to the primary lien status.

On January 29, 2018, less than two weeks after Plaintiffs filed the Amended Complaint, Crown Financial filed its Notice of Removal in this Court. *See* Doc. 1. The basis for removal was complete diversity of citizenship between the parties to the Amended Complaint, Plaintiffs and Crown Financial, and an amount in controversy exceeding $75,000. However, at the time the Original Complaint was filed, complete diversity did not exist because Carroll and Beckham Creek Properties—both Arkansas citizens—were named defendants. Complete diversity was created only after the two nondiverse defendants were dismissed from the Original Complaint and the Amended Complaint was filed.

Plaintiffs believe removal under these circumstances was improper, and they filed a Motion to Remand on February 15, 2018. (Doc. 13). As grounds for remand, they argue that the Court lacks subject matter jurisdiction because Crown Financial's removal was untimely under 28 U.S.C. § 1446(b), (c)(1). Crown Financial responds that when Plaintiffs filed their Amended Complaint more than a year after the lawsuit began, they drastically changed the character of the allegations against Crown Financial, which effectively brought a new lawsuit against Crown Financial that the company sought to remove. (Doc. 16, p. 5). Alternatively, Crown Financial argues that the Plaintiffs acted in bad faith to prevent removal, and therefore, the one-year time limit to removal pursuant to diversity jurisdiction does apply. For these reasons, Crown Financial contends that removal within 30 days of service of the Amended Complaint was timely.

## II. LEGAL STANDARD

"Defendants may remove civil actions to federal court only if the claims could have been originally filed in federal court." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). "The proponents of federal jurisdiction bear 'the burden to establish federal subject matter jurisdiction,' and 'all doubts about federal jurisdiction must be resolved in favor of remand.'" *Moore v. Kan. City Pub. Sch.*, 828 F.3d 687, 691 (8th Cir. 2016) (quoting *Cent. Iowa Power Coop.*, 561 F.3d at 912).

28 U.S.C. § 1446(b)(1) states that a notice of removal "shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based . . . ." If an action is not initially removable under § 1446(b)(1), "a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C § 1446(b)(3). However, "a case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

## III. DISCUSSION

In the case at bar, it is clear that the Original Complaint filed in state court was not initially removable, and the Notice of Removal was filed in this Court more than one year after the case commenced. In opposition to the Motion to Remand, Crown Financial avers that its removal motion is timely because it falls under two exceptions to the general

4

rules of § 1446: (1) the judicially created "revival exception" to § 1446(b)(1); and (2) the bad-faith exception to § 1446(c)(1).

## A. Revival Exception

Crown Financial initially argues that even though the Original Complaint was filed on September 29, 2016, more than a year before removal, Plaintiffs' Amended Complaint, filed on January 16, 2018, started "a virtually new, more complex, and substantial case against Crown upon which no significant proceedings have been held . . . ." (Doc. 16, pp. 4-5). Thus, Crown Financial claims that its removal is timely under the judicially created revival exception. *Id.* at 3.

Some courts "have read into [28 U.S.C. § 1446(b)(1)] an exception for the case where the plaintiff files an amended complaint that so changes the nature of his action as to constitute 'substantially a new suit begun that day.'" *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982) (quoting *Fletcher v. Hamlet*, 116 U.S. 408, 410 (1886)). "The revival exception provides that a lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). This exception to the normal timing rules only applies when: (1) the case was initially removable; and (2) the character of the action has been fundamentally altered by a subsequent amendment to the complaint. *Id.*

Only the Fifth and Seventh Circuits have adopted this exception.[1] Various district courts across the country have considered the revival exception, but have limited it to situations where: (1) the plaintiff deliberately misled the defendant about the nature of the claims until after the expiration of the 30-day period, or (2) an amended complaint "fundamentally alters" the nature of the case. *See, e.g., Nickle v. Israel*, 2015 WL 417828, at *2 (S.D. Fla. Jan. 30, 2015) (citing *Wilson*, 668 F.2d at 965) (not applying revival exception where plaintiff's amended complaint stated constitutional claims that were consistent with previous complaints); *MG Bldg. Materials, Ltd. v. Paychex, Inc.*, 841 F. Supp. 2d 740, 745 (W.D.N.Y. 2012) (applying revival exception where amended complaint transformed case into a class action lawsuit); *Cont'l Prop. Grp., Inc. v. City of Minneapolis*, 2009 WL 282096, at *2 (D. Minn. Feb. 5, 2009) (not applying the revival exception where the legal theories, parties, and underlying facts all remained the same).

Assuming the judicially created revival doctrine would be recognized by the Eighth Circuit, its application depends on the following factors: (1) whether the case was initially removable at the time the original complaint was filed in state court; and (2) whether the character of the action was fundamentally altered by a more recent amendment to the original complaint, or the plaintiff deliberately misled the defendant about the nature of the claims until sometime after the expiration of the 30-day removal period. Both factors must be established. *Johnson*, 227 F.3d at 241.

---

[1] *See Johnson v. Heublein Inc.*, 227 F.3d 236 (5th Cir. 2000); *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982).

## 1. Initially Removable

The first requirement of the revival exception is that the case must have been initially removable. *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). The case at bar was not initially removable at the time it was filed because the named parties were not completely diverse. "When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship," the defendant may remove the case to federal court pursuant to 28 U.S.C. § 1441. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Pursuant to 28 U.S.C. § 1332, district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, and the parties are of diverse citizenship.

"[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990) (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978)). "[D]iversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). The time-of-filing rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed *at the time of filing*—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004) (emphasis added).

"Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 540-541 (1939)). A district court

must take into account the citizenship of all named defendants, even if unserved, to determine whether the court possesses diversity jurisdiction. *Pecherski v. Gen. Motors Corp.* 636 F.2d 1156, 1160-61 (8th Cir. 1981). As noted by the Eighth Circuit, "allowing unserved defendants to be ignored for removal purposes would create needless jurisdictional problems." *Id.* at 1161 n.6.

A district court's jurisdiction is further limited by 28 U.S.C. § 1441(b)(2), which prevents removal under § 1332(a) "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." However, the Eighth Circuit has held that § 1441(b)'s forum defendant rule does not change the requirement that, "in determining the propriety of removal based on diversity of citizenship, [district courts] must consider all named defendants, regardless of service." *Id.* at 1160-61.

In the case at bar, two of the defendants named in the Original Complaint, Jeremy Carroll and Beckham Creek Properties, were citizens of the same state as Plaintiffs. (Doc. 14, p. 1). Thus, at the time the Original Complaint was filed in state court, the action could not have been originally filed in federal court because there was a lack of complete diversity. *See Freeport-McMoRan*, 498 U.S. at 428. The Court rejects Crown Financial's argument that the case was initially removable because the non-diverse defendants were never properly served. As previously explained, when determining the propriety of removal, the Court cannot simply ignore the citizenship of defendants who were named in the Original Complaint but were not properly served. *See Deshotel*, 142 F.3d at 883; *Pecherski,* 636 F.2d at 1161 n.6.

Therefore, the action was not initially removable because there was a lack of complete diversity at the time the Original Complaint was filed in state court. The first requirement of the revival exception has not been met, and there is no need for the Court to reach the second requirement of the "revival exception" test. However, in the spirit of thoroughness, the Court will explain below why the second requirement was also not met.

### 2. Amended Complaint Does Not Substantially Alter the Nature of the Case

The second requirement of the revival exception is that the character of the action has been fundamentally altered by a subsequent amendment to the complaint. *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). Crown Financial avers that the Amended Complaint started "a virtually new, more complex, and substantial case against Crown upon which no significant proceedings have been held . . . ." (Doc. 16, pp. 4-5). Essentially, Crown Financial argues that the new claim of equitable merger in the Amended Complaint changes the case "from one that would have no substantive impact on Crown, to one that would have a significant financial impact on Crown," and therefore revives the 30-day period of removal. *Id*. However, Crown Financial has not established that: (1) Plaintiffs deliberately misled Crown Financial about the nature of the claims until after the expiration of the 30-day period; *or* (2) the Amended Complaint "fundamentally altered" the nature of the case.

In the Original Complaint, Plaintiffs brought claims seeking to foreclose the mortgage securing their promissory notes, and the claims seeking that relief remain in their Amended Complaint today. *Compare* Doc. 1-1, *with* Doc. 3. It was not until over one year after the filing of the Original Complaint that Plaintiffs learned that Carroll had conveyed his membership interest in Beckham Creek Properties to Crown Financial. This

event, which led to the filing of the Amended Complaint, occurred well after the 30-day statutory removal deadline had expired. The timing therefore indicates that Plaintiffs did not attempt to mislead Crown Financial about the nature of their claims during the 30-day removal period.

Also, the Court finds that Plaintiffs' Amended Complaint did not fundamentally alter the character of the action in such a way as to essentially create a new case. *See Johnson*, 227 F.3d at 241. The Original Complaint identified Carroll and Beckham Creek Properties as makers of the two promissory notes at issue. (Doc. 1-1, p. 2). The Original Complaint also requested foreclosure of the mortgage property securing the Plaintiffs' promissory notes and prayed for a judicial sale of the mortgaged property. *Id.* Crown Financial was also named as a defendant due to its superior lien status. *Id.* Plaintiffs' requested relief in the Amended Complaint has not substantially altered from the relief sought in the Original Complaint. Plaintiffs still seek to foreclose the mortgaged property. (Doc. 3, pp. 3-4). Only one new claim has been asserted to help bolster Plaintiffs' request. The new claim is that Crown Financial's security interest in the Foreclosure Property merged with its equity interest, making Plaintiffs' security interest the superior lien on the Foreclosure Property. (Doc. 3, p. 3). While resolution of this claim could alter Crown Financial's status as a creditor of the Foreclosure Property, it does not transform this action into a "new case." It is likely Plaintiffs would have attempted to challenge the validity of Crown Financial's mortgage in any event. In fact, Plaintiffs' Original Complaint states that "[Crown Financial's] mortgage, **if valid**, would be prior and paramount" to Plaintiffs' mortgages. (Doc. 1-1, pp. 5-6) (emphasis added). For these reasons, the second requirement of the revival exception has not been met.

## B. Bad-Faith Exception

Crown Financial next argues that its late removal may be excused under the bad-faith exception to the one-year time limit of removal found at 28 U.S.C. § 1446(c)(1). To be sure, Defendant is not claiming wrongful joinder. Instead, its argument is that Plaintiffs acted in bad faith by "making no attempt to serve Beckham Creek Properties" with the Original Complaint in state court, "not moving to voluntarily dismiss Beckham Creek Properties until more than one year after the Original Complaint was filed," and exhibiting gamesmanship by drastically changing the Original Complaint after the dismissal of the non-diverse defendants following the expiration of the one-year clock. (Doc. 16, pp. 7-9). Thus, due to Plaintiffs' conduct, Crown Financial believes that it qualifies for the bad-faith exception to the timing rules of 28 U.S.C. § 1446(b)(3).

Under § 1446(b)(3), if a case is not initially removable, but becomes removable at a later date, a defendant has 30 days to file a notice of removal after receipt by the defendant of copy of an amended pleading, motion, order, or other paper "from which it may first be ascertained that the case is one which is or has become removable." However, under § 1446(c)(1), a case may not be removed more than one year after the commencement of the action, "unless the district court finds that the plaintiff has acted in *bad faith* in order to prevent a defendant from removing the action." (emphasis added).

As an initial matter, Crown Financial removed the Amended Complaint within the 30-day time frame required by § 1446(b)(3). However, the Amended Complaint was filed more than one year after the commencement of the original action.[2] Thus, the Court must

---

[2] This case was filed in the Circuit Court of Newton County, Arkansas on September 29, 2016. Rule 3 of the Federal Rules of Civil Procedure states that "[a] civil action is commenced by filing a complaint with the court." Thus, the case was commenced on

determine whether Plaintiffs acted in bad faith to prevent removal. If so, then the bad-faith exception could render timely an otherwise untimely removal.

Crown Financial argues that Plaintiffs acted in bad faith because they made no attempt to serve Beckham Creek Properties with the Original Complaint and did not voluntarily dismiss Beckham Creek Properties from the current action until the one-year removal period expired. (Doc. 16, p. 7). Crown Financial also claims that because Plaintiffs did not propound discovery on Crown Financial until more than a year after the Original Complaint was filed, it is Plaintiffs' "fault" that they did not discover the facts that form the basis of the new claim in the Amended Complaint until *after* the expiration of the one-year limitations period. *Id.* at 8.

In response, Plaintiffs argue that they did not act in bad faith. They point to the decision in *Bajaba, LLC v. General Steel Domestic Sales, LLC*, 2014 WL 5363905 (W.D. Ark. Oct. 21, 2014), to support their argument, as the facts in *Bajaba* are similar to those at issue here. Plaintiffs allege that Carroll and Beckham Creek Properties are the defendants responsible for defaulting on the promissory notes. Additionally, Plaintiffs argue that the bad-faith exception does not apply here because they have continued to litigate their claims against Carroll and Beckham Creek Properties (the nondiverse defendants) in a separate action in state court. (Doc. 14, p. 7). Further, Plaintiffs state that Crown Financial can point to no explicit evidence that the nondiverse defendants were only retained to defeat diversity jurisdiction. *Id.* at 9.

---

September 29, 2016. The Notice of Removal in this case was filed on January 29, 2018 (Doc. 1), more than one year after the commencement of this action.

Turning to the *Bajaba* case, the plaintiff there was unable to properly serve the nondiverse defendants, and did not nonsuit the claims against those defendants until two years after the suit was commenced. *Id*. at *1. In finding that the bad-faith exception did not apply, the Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, was "not persuaded that Bajaba joined the [nondiverse defendants] in 'bad faith' in order to prevent removal." *Id*. at *3. The court relied upon the following facts in finding that the bad-faith exception did *not* apply: (1) the nondiverse defendants "were the persons allegedly responsible" for completion of the contract; (2) the complaint remained unchanged for almost two years; and (3) the plaintiff continued its effort to serve and bring the nondiverse defendants into the suit after the completion of the one-year period. *Id*. Additionally, the *Bajaba* plaintiff proffered evidence that it intended to continue pursuing its claims against the nondiverse defendants. *Id*. Because federal courts are to strictly construe removal statutes, the district court in *Bajaba* determined that the defendant had not met its burden to show that late removal was proper under the bad-faith exception. *Id*.

As in *Bajaba*, Plaintiffs in this case allege that the nondiverse defendants are the parties liable for defaulting on the promissory notes at issue, and Plaintiffs have also continued to litigate against the nondiverse defendants in another forum. Accordingly, this Court finds that Crown Financial has not met its burden to show that late removal was proper under the bad-faith exception.

Further support for the Court's conclusion is found in the opinions of a few district courts outside the Eighth Circuit, which have gone so far as to limit the bad-faith exception to circumstances where "the plaintiff engaged in intentional conduct to deny the defendant

the chance to remove the case to federal court." *See Hiser v. Seay*, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014). For example, in *Bryson v. Wells Fargo Bank*, 2016 WL 1305846, at *4 (E.D. Tex. Mar. 31, 2016), the defendant argued that the plaintiff "acted in bad faith because he was 'extremely dilatory in dismissing [the] non-diverse defendant . . . .'" In considering the issue, the Eastern District of Texas cited three other cases in which courts found bad faith and compared those facts to the ones in *Bryson*:

> In *Tedford*, the Fifth Circuit found that a plaintiff's conduct constituted bad faith where the plaintiff, mere hours after learning that the defendant intended to seek removal, amended her pleading to add a non-diverse defendant, her own doctor, and then signed and post-dated a notice of nonsuit against the doctor. *Tedford*, 327 F.3d at 427. The court and the defendants were unaware of the post-dated nonsuit until after the one year deadline had passed. *Id.* at 428. In *Lawson*, the court found that a plaintiff acted in bad faith when the plaintiff failed to serve the defendant until seven months after filing suit, did not move for a default judgment when the defendant failed to appear or answer the plaintiff's petition, and never sought discovery against the defendant. 2014 WL 1158880, at *6. Finally, in *Shriver*, the court found bad faith when a plaintiff non-suited the non-diverse defendant "beyond the eleventh hour," essentially the night before the trial in state court was set to begin. 167 F. Supp. 2d at 963-64. Also, the plaintiff in *Shriver* had previously dismissed his initial suit when it was removed to federal court and then re-filed essentially the same suit in state court but added a non-diverse defendant. *Id.* at 962-63.

*Id.* The *Bryson* court concluded that the plaintiff "cannot point to any of the clearly egregious types of facts detailed in *Tedford*, *Lawson*, or *Shriver*," *id.* at *6, and declined to find that the bad-faith exception to the removal rules applied. The court further found that its ruling conformed to the "overarching principle that the removal statutes must be strictly construed and all doubts resolved in favor of remand." *Id.*

In the instant case, Crown Financial has failed to put forth any evidence of intentional conduct by the Plaintiffs designed solely to defeat diversity jurisdiction. Therefore, it has not been established that Plaintiffs acted in bad faith, and this exception to the strict application of the removal statue is unavailable.

## IV. CONCLUSION

The Court concludes that Crown Financial's removal was untimely under 28 U.S.C. § 1446(b), (c)(1). Crown Financial has failed to meet its burden to establish bad faith by Plaintiffs or that the judicially created revival exception should apply. Moreover, as removal statutes should be strictly construed and any doubts about removal resolved in favor of remand, the Court is satisfied that remanding the case to state court is appropriate under the circumstances.

**IT IS THEREFORE ORDERED**, for the reasons explained herein, that Plaintiffs' Motion to Remand (Doc. 13) is **GRANTED**. The Clerk of the Court is directed to immediately **REMAND** the case to the Circuit Court of Newton County, Arkansas. The pending motion in this case is preserved for later resolution by the state court.

**IT IS SO ORDERED** on this 2nd day of May, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE